Joseph A. Suozzi, J.
This is a proceeding under article 78 of the Civil Practice Act in which the petitioner seeks to annul a determination of the Zoning Board of Appeals of the Town of Oyster Bay denying him a building permit to erect a home on lots substandard in area and width. Although the petitioner’s application is referred to as an application for a variance, it is clear that the petitioner seeks a building permit solely on the ground that lots 14 and 15 (on which he seeks to build) were held in single ownership, and that their ownership had not merged with the adjacent lots 11, 12 and 13.
*401 The subject matter lots are designated as lots 14 and 15 in section 66, block 19 of the Land and Tax Map of Nassau County, and are situate in the Nassau Shores section of Massapequa. Since January 27,1953, the property has been located in a “ C ” .Residence District. The minimum building area in this district is 10,000 square feet, with permission afforded to owners holding-land in single separate ownership to build on 8,500 square feet provided the land has a width of 68 feet (art. V, § C-3) and aggregate side yards of 25 feet but not less than 10 feet on either side (art. V, § C-7). The two lots in question each measure 20 by 100 feet, and have a total area of 4,000 square feet.
The respondent board denied the variance application on the ground that lots 14 and 15 merged in common ownership when their title was acquired in 1956 by the owner of the adjacent or contiguous property. This result is based on the following-facts. In 1949 the petitioner’s predecessor in title, Earl and Marilyn Retchliss, acquired ownership to lots 11, 12 and 13, which are adjacent to the property in question, and erected a home on this site having an area of 6,000 square feet. In August, 1956, they also acquired the fee to lots 14 and 15. They subsequently conveyed their homesite, and thereafter separately sold off lots 14 and 15, whose title the petitioner acquired in 1962.
It is undisputed that prior to 1956, lots 14 and 15 were hold in single and separate ownership. The respondents also concede that lots 14 and 15 were a permissible building plot under the applicable zoning ordinance as it existed before January 27, 1953. It seems evident, therefore, that these lots, unless they are considered to have merged in common ownership, continued to constitute a buildable site even after the 1953 amendment, despite the fact that the land still did not meet area requirements (Matter of Feldman v. Nassau Shores Estates, 12 Misc 2d 607, affd. 7 A D 2d 757). Any other construction of the ordinance would preclude the use of the property for any reasonable use and would be confiscatory (Matter of Feldman v. Nassau Shores Estates, supra; Matter of Stadden v. Macauley, 12 Misc 2d 297, affd. 4 A D 2d 704).
The applicable ordinance of the Town of Oyster Bay provides as follows:
“ § 0-3. 1. In the case of any lot or plot, substandard in area by the terms of the ordinance, but once legally buildable and thereafter singly and separately held in fee ownership, the rights acquired or existing therein, for the use of said lot or plot as a buildable parcel, shall terminate and become nonexistent and void should the said substandard plot merge in fee with any adjoining land or property, thereby creating a parcel to conform *402 with the area requirements of the ordinance, or thereby enlarging a parcel already conforming with such requirements.
‘1 Such merger shall be deemed to occur when the same person or persons acquire, obtain or have fee ownership in both parcels whether by purchase, sale, devise, gift or otherwise.”
A finding of a merger in the situation presented here requires a much clearer demonstration of an intention to merge the two plots than it is possible to infer from the record before the court. Except for a showing of common ownership, the record is barren of any evidence from which the court can conclude that the two plots ‘ ‘ had been maintained and used by that owner as one plot, indicating a merger of the two plots ”.
A merger may be deemed to have occurred in a case where the owner of a substandard plot, which is unimproved and unused, acquires an adjacent parcel which is also unimproved. Any other construction in such a situation would mean an automatic invalidation of all up-zoning, and frustrate the policy of conformity which a municipality may seek to promote (Matter of Fina Homes v. Young, 14 Misc 2d 576). In such a case, however, it should be noted that no vested rights in either of these parcels are acquired by virtue of a zoning ordinance, since vested rights under a zoning ordinance are acquired solely by taking some action in reliance on the ordinance. Stated in another way, it is the use of the land pursuant to a zoning ordinance and not the zoning ordinance which creates the vested right.
Such is not the ease here. At the time of the 1953 amendment to the zoning ordinance, the 60-foot parcel (lots 11, 12 and 13) with which the board finds lots 14 and 15 merged, was nonconforming both as to area and as to use. The right to continue this nonconforming use had vested and continued after the amendment to run with the land. It is an accepted fundamental of zoning law that a nonconforming use continues to exist until there is an abandonment of it. (Matter of Franmor Realty Corp. v. Le Boeuf, 279 App. Div. 795; Marshak v. City of Long Beach, 278 App. Div. 966.) A finding of abandonment may not be made here simply from the acquisition by the owner of an adjacent parcel. It requires a greater demonstration of an intention to abandon than it is possible to find in this record. In the absence of a finding that there had been an abandonment of the nonconforming use in lots 11, 12 and 13, it would be impossible as a matter of law to find that there was a merger with lots 14 and 15 simply from the fact of common ownership. Therefore the board’s finding cannot be sustained.
The situation here is distinguishable on the facts from the facts in the Fina case (supra) in that there the common owner *403 ship existed before the amendment. Here, lots 14 and 15 were acquired subsequent to the amendment. Further, the case may be distinguishable in that the provisions of the ordinances involved are not identical.
It should be further observed that in a situation in which the Zoning Board of Appeals might be dealing with lots 11, 12 and 13, a finding based on the provision of the ordinance hereinabove referred to that a merger was deemed to have occurred with lots 14 and 15 would not be possible for another reason. The ordinance refers to “ any lot or plot substandard in area * * * but once legally buildable ’ ’. As the court reads this
provision, it would apply to an unimproved lot or plot, and not to one which has already been built on in conformity with the then existing zoning ordinance. We are therefore confronted with a situation where the ordinance is not applicable with respect to one plot on the face of the provision itself. For two plots to be deemed to have merged into one, pursuant to the ordinance afore-mentioned, consistency and logic would require that the ordinance apply with equal force to each of the plots. This would not seem to be the case here.
Accordingly, the decision of the Zoning Board of Appeals of the Town of Oyster Bay is annulled, and the Building Inspector is directed to issue a building permit as prayed for in the petition. However, on application of the Building Inspector to the Zoning Board of Appeals, made no later than 10 days from the entry of the order herein, the board may set this matter down for a hearing not later than 30 days after the Building Inspector’s application, for the purpose of presenting such evidence as may be available to the Building Inspector and to any objectants to establish the abandonment of the nonconforming use with respect to lots 11, 12 and 13 and that the two plots had been maintained and used as one plot.